UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| BEVERLY GREEN,<br><br>          Plaintiff,<br><br>     v.<br><br>ADT, LLC,<br><br>          Defendant. | Case No. 16-cv-02227-LB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART THE DEFENDANT'S MOTION TO DISMISS**<br><br>Re: ECF No. 7 |

## INTRODUCTION

This is a products liability and negligence action arising from an allegedly defective security system.[1] Beverly Green sued ADT, her alarm-system provider and operator, when, after ADT falsely warned her of a home intruder in the early morning hours, she jumped out of her bedroom window and broke her ankle.[2] ADT now moves to dismiss the complaint under Rule 12(b)(6).[3] ADT argues that her products liability claims fails because it provides services, not products.[4] It also contends that her negligence claim falls short because she does not identify a tort-law duty.[5]

---

[1] Compl. – ECF No. 1-1. Record citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Compl. ¶¶ 6-8.

[3] Motion to Dismiss ("Motion") – ECF No. 7.

[4] *Id.* at 9-13.

[5] *Id.* at 13-15.

ORDER (No. 16-cv-02227-LB)

This matter can be decided without oral argument. *See* N.D. Civ. L.R. 7-1(b). The court denies in part ADT's motion because, although its transaction with Ms. Green may be predominantly for services, she alleges that it designed and manufactured the alarm-system components, which is sufficient to withstand ADT's current challenge. The court grants in part ADT's motion because Ms. Green does not adequately plead an independent duty to sustain a negligence claim.

## STATEMENT

At 2:30 a.m. one morning, ADT called Ms. Green, alerted her that an intruder was in her home, and told her that it was calling the police.[6] Ms. Green was "terrified about what was about to occur":[7] she feared that "once the intruder finished plundering her living room, dining room, and kitchen, he would then enter her bedroom[,]" where she was.[8] She feared "assault, sexual assault, other injury, or worse — death at the hands of the intruder."[9] So, she called 9-1-1 and decided to make a break for her car.[10]

Ms. Green moved through a bedroom window that "open[ed] to the front of her home, near her driveway," trying to reach the car.[11] Although the window sits only three to four feet above the ground, Ms. Green — in a panicked state — fell and severely fractured her ankle.[12] The "injury required surgery, and affects her mobility and working capacity to this day."[13]

ADT's intruder alert turned out to be false: although its "security system had detected an intruder in her home[,]" that detection was actually caused "by a disconnected wire in the control box."[14] Ms. Green alleges that ADT "designed, manufactured, distributed, installed, maintained[,]

---

[6] Compl. ¶ 6.
[7] *Id.* ¶ 6.
[8] *Id.* ¶ 7.
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.* ¶ 10.
[14] *Id.* ¶¶ 6-8.

ORDER (No. 16-cv-02227-LB)       2

and operated" the alarm system that failed.[15] She asserts that the system, including its motion detectors, was defective because it "suddenly and unexpectedly set off a signal indicating an intruder's presence in the home, with no ability to distinguish a failure in the system."[16] She accordingly alleges that the false alarm caused her injuries.[17]

Ms. Green sued ADT in state court, alleging five causes of action: 1) strict products liability — design defect; 2) strict products liability — failure to warn; 3) negligent products liability; 4) negligent products liability — negligence of manufacturer or supplier; and 5) negligence.[18] ADT removed the action and now moves to dismiss Ms. Green's claims under Rule 12(b)(6).[19]

## GOVERNING LAW

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of a "failure to state a claim upon which relief can be granted." A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon which they rest. *See* Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a claim for relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (internal citations omitted).

---

[15] *Id.* ¶ 9.

[16] *Id.* ¶ 11.

[17] *Id.* ¶¶ 12-15.

[18] *Id.* ¶¶ 16-55.

[19] Notice of Removal – ECF No. 1; Motion to Dismiss – ECF No. 7.

ORDER (No. 16-cv-02227-LB)        3

To survive a motion to dismiss, a complaint must contain sufficient factual allegations, accepted as true, "'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Id.* (quoting *Twombly*, 550 U.S. at 557).

If a court dismisses a complaint, it should give leave to amend unless the "the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

## ANALYSIS

ADT asserts three bases for dismissing Ms. Green's claims. First, it argues that Ms. Green's products liability claims fail because alarm systems and related services are not products under California law.[20] Second, ADT argues that her negligence claim fails because she does not allege a common-law duty.[21] And third, to the extent there is a common-law duty to support a negligence claim, it argues that Ms. Green's claim is barred or limited by contract.[22] The court limits its considerations to ADT's arguments and addresses each in turn.

**1. Ms. Green's products liability claims survive**

Ms. Green brings products liability claims in both negligence and strict liability. ADT moves to dismiss these claims — without distinguishing between the theories of liability — because, it

---

[20] Motion at 9-13.
[21] *Id.* at 13-15.
[22] *Id.* at 15-16.

ORDER (No. 16-cv-02227-LB)    4

asserts, its security system and services are not products (but instead are services). Although ADT may in the end be correct and Ms. Green may not be able to recover, her claims survive the current motion because she pleads that ADT *manufactured* the system components, not *just* provided them in connection with its services.

As an initial matter, a products-liability claimant "must show that the object or instrumentality claimed to be defective was in fact a 'product[.]'" *Brooks v. Eugene Burger Management Corp.*, 215 Cal. App. 3d 1611, 1626 (1989). "A product is a physical article which results from a manufacturing process and is ultimately delivered to a consumer." *Pierson v. Sharp Memorial Hospital*, 216 Cal. App. 3d 340, 345 (1989). Here, the alarm system components — *i.e.* the control box and motion detectors — are physical articles that result from a manufacturing process and were delivered to Ms. Green. These physical components may therefore serve as a basis for a products liability claim.

Even when a defective "product" is involved, a plaintiff may not have a strict-liability claim. "A manufacturer is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury . . . ." *Ferrari v. Grand Canyon Dories*, 32 Cal. App. 4th 248, 257 (1995) (quoting *Greenman v. Yuba Power Products, Inc.*, 59 Cal. 2d 57, 62 (1963)) (internal quotations omitted). Strict liability has been imposed on manufacturers, retailers, bailors, lessors, and licensors. *See Ferrari*, 32 Cal. App. 4th at 257; *Silverhart v. Mount Zion Hospital*, 20 Cal. App. 3d 1022, 1026 (1971). Courts have not, however, "extended the doctrine of strict liability to transactions whose primary objective is obtaining services." *Pierson*, 216 Cal. App. 3d at 344.

The applicability of strict liability in transactions involving both services and products depends on the defendant's role and the dominant element of the exchange. *Id*. "Where purchase of a product is the primary objective or essence of the transaction, strict liability applies even to those who are mere conduits in distributing the product to the consumer." *Id.* "Where[, however,] the transaction's service aspect predominates and any product sale is merely incidental to the provision of the service[,]" strict liability will not apply. *Id.*

Here, ADT argues that Ms. Green's claims must fail because the predominant nature of the transaction was for services, not products. It points to several cases where the defendant was not strictly liable for product defects because the essence of the subject transaction was for services. For example, in *Ontiveros v. 24 Hour Fitness Corp.*, the plaintiff was injured by defective stair-step equipment at the defendant's exercise facility. 169 Cal. App. 4th 424, 427 (2008). The defendant-facility could not be held strictly liable because the stair-step was only incidental to the fitness services that it provided. *Id.* at 434-35. Similarly, in *Pierce v. Pacific Gas & Elec. Co.*, the plaintiff-homeowner sued PG&E in strict liability for an electric shock that flowed from a defective transformer. 166 Cal. App. 3d 68 (1985). Emphasizing that PG&E did not manufacture the transformer, the court found that PG&E "was, in essence, a consumer" of the transformer and could not be held strict liable for its defects. *Id.* at 76. *See also Pierson*, 216 Cal. App. 3d at 346-47 (holding defendant-hospital not strictly liable for defective rug that caused plaintiff's injuries); *Silverhart v. Mount Zion Hospital*, 20 Cal. App. 3d 1022, 1027-28 (1971) (holding defendant-hospital not strictly liable for defective needle used during surgery).

In the above cases, the defendants occupied the last link in distribution chain. So does ADT: it provided the control box and motion detectors in conjunction with its security services. Unlike those cases, however, ADT also (allegedly) occupies the first link in the chain: Ms. Green alleges that ADT designed and manufactured the alarm components.[23] ADT consequently occupies a dual role not seen in the cases it relies on; it is simultaneously the manufacturer and provider of products and related services. It is as if ADT is concurrently the stair-step manufacturer and 24 Hour Fitness, the transformer manufacturer and PG&E, the rug maker and the hospital. Although 24 Hour Fitness, PG&E, and the hospital could not be strictly liable for products incidental to their services, certainly the manufacturers of those products could be. To be sure, as the *Ferrari* court explained, an airline passenger would have a strict products liability claim against the airplane manufacturer, but not against the airline operating the flight. 32 Cal. App. 4th at 258.

---

[23] Compl. ¶¶ 9, 23, 29, 38, 44.

ORDER (No. 16-cv-02227-LB)　　　　6

Here, as pled, ADT is one in the same: manufacturer and provider. Ms. Green's products liability claims therefore survive ADT's argument because she alleges that ADT designed and manufactured the system components.

### 2. Ms. Green's negligence claim fails for lack of a common-law duty

ADT moves to dismiss Ms. Green's negligence claim on the grounds that she fails to plausibly plead the existence of a common-law duty, or, alternatively, that the contract terms bar or limit her recovery.[24] Because the court agrees that Ms. Green fails to allege the existence of a duty, it dismisses the claim without reaching ADT's alternative grounds for dismissal.

#### 2.1 The court considers the protective service agreement

"As a general rule, [a district court] 'may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.'" *United States v. Corinthian Colleges*, 655 F.3d 984, 998-99 (9th Cir. 2011) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)); *see Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) ("[T]he general rule [is] that courts, when ruling on a motion to dismiss, must disregard facts that are not alleged on the face of the complaint or contained in documents attached to the complaint.") (citation omitted)). The incorporation-by-reference doctrine is an exception to this rule. Under the doctrine, the court may (but it does not have to) consider documents outside of the pleadings, without converting the motion to dismiss into a motion for summary judgment, by considering documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached" to the complaint. *Knievel*, 393 F.3d at 1076 (quotation omitted). The Ninth Circuit has "extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even if though the plaintiff does not explicitly allege the contents of that document in the complaint." *Id.* (quotation omitted); *see*

---

[24] Motion at 13-15.

*Perrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir. 1998) (describing the policy of this rule as "[p]reventing plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based[.]").

Here, ADT attaches to its motion and reply a Protective Service Agreement between Ms. Green and Brink's.[25] Ms. Green asserts that the contract is between her and Brink's, is illegible, and should not be considered.[26] ADT is the successor in interest to Brink's, though, and the contract is sufficiently legible to decide if she plausibly pleads a duty (see below). Ms. Green's negligence claim rests on ADT's provision of security services and products, obligations arising from the contract. (If there was no contract, ADT would have had no reason to provide the products and services in the first place.) Thus, her claims depend on the services provided under the agreement, she does not question its authenticity, and the court can consider it without converting the instant motion to a motion for summary judgment.

**2.2 Ms. Green fails to identify a common-law duty**

"In order to prove facts sufficient to support a finding of negligence, a plaintiff must show that the defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury." *Hayes v. Cnty. of San Diego*, 57 Cal. 4th 622, 629 (2013) (alterations omitted). "The threshold element of a cause of action for negligence is the existence of a duty to use due care toward an interest of another that enjoys legal protection against unintentional invasion." *Bily v. Arthur Young & Co.*, 3 Cal. 4th 370, 397 (1992). Although "the same wrongful act may constitute both a breach of contract and an invasion of an interest protected by the law of torts[,]" a plaintiff must still identify a duty to support a claim in tort. *Erlich v. Menezes*, 21 Cal. 4th 543, 551 (1999) (quoting *North American Chemical Co. v. Superior Court*, 59 Cal. App. 4th 764, 774 (1997)).

---

[25] Protect Service Agreement – ECF Nos. 7-2 and 14-1. ADT is the successor-in-interest to Brink's. (Motion at 7 n.1.)

[26] Opposition – ECF No. 13 at 5-6.

"A contractual obligation may create a legal duty and the breach of that duty may support an action in tort." *Erlich*, 21 Cal. 4th at 551 (internal quotations omitted). "[C]onduct amounting to a breach of contract[, however,] becomes tortious only when it also violates a duty independent of the contract arising from principles of tort law." *Id.* (quoting *Applied Equipment v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 515 (1994)). Thus, "courts will generally enforce the breach of a contractual promise through contract law, except when the actions that constitute the breach violate a social policy that merits the imposition of tort remedies." *Freeman & Mills, Inc. v. Belcher Oil Co.*, 11 Cal. 4th 85, 106 (1995); *Erlich*, 21 Cal. 4th at 552. "Exceptions have been permitted only where: a breach of duty causes a physical injury; the covenant of good faith and fair dealing is breach in an insurance contract; an employee was wrongfully discharged in violation of a fundamental public policy; or a contract was fraudulently induced." *Oracle USA, Inc. v. XL Global Servs., Inc.*, No. C 09-00537 MHP, 2009 WL 2084154, at *4 (N.D. Cal. July 13, 2009) (citing *Butler-Rupp v. Lourdeaux*, 143 Cal. App. 4th 1220 (2005)); *Missud v. Oakland Coliseum Joint Venture*, No. 12-02967 JCS, 2013 WL 812428, at *20 (N.D. Cal. Mar. 5, 2013) ("Tort damages have been permitted in contract cases where a breach of duty directly causes physical injury, for breach of the covenant of good faith and fair dealing in insurance contracts, for wrongful discharge in violation of public policy, and where the contract was fraudulently induced.").

Here, to the extent that Ms. Green's negligence claim is not based on product defects (which she alleges separately), the complaint does not plausibly support the existence of a duty separate from the contract. The underlying contract specifies that Brink's (ADT's predecessor) "will install and make operational the Protective Equipment . . . [and] [w]hen Brink's receives a signal indicating activation of the Protective equipment . . . will observe the procedures described[.]"[27] Ms. Green alleges that ADT installed the alarm system, at which point the control-box wire may plausibly have been disconnected.[28] She further alleges that ADT's system (falsely) detected an

---

[27] Protective Service Agreement § 1(b).

[28] Compl. ¶¶ 6-8.

intruder in her home and that ADT called and warned her.[29] These allegations do no more than mirror ADT's contractual obligations — *i.e.* to install, monitor, and repot activation of the security system — and conceivably a breach thereof. They do not, however, plausibly establish a separate duty.

The court notes that Ms. Green suffered physical harm as a result of the incident. The court's independent research revealed that California courts have allowed tort recovery in contract cases where the plaintiff suffers physical injury. *See, e.g.*, *Erlich*, 21 Cal. 4th at 551-52 ("Tort damages have been permitted in contract cases where a breach of duty directly causes physical injury[.]"). Ms. Green does not, however, style her claim in this manner, and does not address or argue this point in her opposition brief. On this record, then, the court dismisses the negligence claim but with leave to amend.

## CONCLUSION

The court grants in part and denies in part ADT's motion to dismiss. Ms. Green's products liability claims survive; her negligence claim is dismissed. Ms. Green may amend her complaint within 21 days from the date of this order. Whether she amends her complaint or not, ADT's responsive pleading will be due within 21 days of that date.

**IT IS SO ORDERED.**

Dated: June 10, 2016

LAUREL BEELER
United States Magistrate Judge

---

[29] *Id.* ¶ 6.