1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

BEVERLY GREEN,

　　　　　　Plaintiff,

　　v.

ADT, LLC,

　　　　　　Defendant.

Case No. 16-cv-02227-LB

**ORDER GRANTING IN PART AND DENYING IN PART THE DEFENDANT'S MOTION TO DISMISS**

Re: ECF No. 21

## INTRODUCTION

This is a products liability, negligence, and breach-of-contract case arising from an allegedly defective home security system.[1] Beverly Green sued ADT, her alarm-system provider and operator, when, after ADT falsely warned her of a home intruder in the early morning hours, she broke her ankle during an attempted escape through her bedroom window.[2] ADT now moves to dismiss certain of Ms. Green's claims, for the second time, under Rule 12(b)(6).[3]

This matter can be decided without oral argument. *See* N.D. Civ. L.R. 7-1(b). The court grants in part ADT's motion and dismisses Ms. Green's negligence claim because she again fails to

---

[1] First Amended Compl. ("FAC") — ECF No. 17. Record citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] FAC ¶¶ 6–8.

[3] Order on Motion to Dismiss — ECF No. 16; Motion to Dismiss — ECF No. 21.

allege a duty to support her standalone negligence claim. The court denies in part ADT's motion because, at this stage of the litigation, Ms. Green plausibly asserts claims for failure to warn and manufacturing defect.

## STATEMENT

At 2:30 a.m., ADT called Ms. Green, warned her that her security system detected a home intruder, and told her it was calling the police.[4] Ms. Green was "terrified about what was about to occur":[5] she feared that "once the intruder finished plundering her living room, dining room, and kitchen, he would enter her bedroom," where she then was.[6] She believed she was "at-risk of assault, sexual assault, other injury, or worse — death at the hands of the intruder."[7]

Ms. Green hung up with ADT, called 9-1-1, and "determined that the safest course of action would be to attempt to reach her car which was parked in the driveway just outside her bedroom window."[8] Her car "would provide her with a chance to escape."[9] Other than a door "leading to the rest of the house" (and the intruder), the window was the only exit from Ms. Green's bedroom.[10] The window was only three or four feet from the ground, but Ms. Green — in a panicked state — fell and severely fractured her ankle.[11] The injury required surgery, including "the installation of metal plates and hardware," and affects "her mobility and working capacity to this day."[12]

_United States District Court_
_Northern District of California_

---

[4] FAC ¶ 6.

[5] _Id._

[6] _Id._ ¶ 7.

[7] _Id._

[8] _Id._

[9] _Id._

[10] _Id._

[11] _Id._

[12] _Id._ ¶¶ 7, 10.

The intruder alert turned out to be false: ADT "later discovered that the detection of the supposed intruder had actually been caused by a disconnected wire in the control box."[13] Ms. Green thereafter sued, alleging that ADT — as designer, manufacturer, distributor, installer, maintainer, and operator of the system — caused the injuries to her ankle.[14] On ADT's motion, the court dismissed Ms. Green's initial complaint in part.[15] In her First Amended Complaint ("FAC"), she asserts six claims: (1) strict products liability — design defect; (2) strict products liability — failure to warn; (3) negligent products liability; (4) negligent products liability — negligence of manufacturer or supplier; (5) negligence; (6) breach of contract.[16] Under Rule 12(b)(6), ADT now moves to dismiss Ms. Green's negligence, failure to warn, and manufacturing defect claims.[17] ADT also argues that Ms. Green's negligence and contract claims are limited by the parties' agreement.[18]

## RULE 12(B)(6) STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon which they rest. *See* Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a claim for relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (internal citations omitted).

---

[13] *Id.* ¶¶ 7, 8.

[14] *Id.* ¶¶ 9–15.

[15] Order on Motion to Dismiss — ECF No. 16.

[16] *See* FAC ¶¶ 16–60.

[17] Motion to Dismiss FAC — ECF No. 21.

[18] *Id.*

United States District Court
Northern District of California

United States District Court
Northern District of California

1   To survive a motion to dismiss, a complaint must contain sufficient factual allegations,

2   accepted as true, "'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

3   U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when

4   the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

5   defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a

6   'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

7   unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are

8   'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and

9   plausibility of 'entitlement to relief.''" *Id.* (quoting *Twombly*, 550 U.S. at 557).

10   If a court dismisses a complaint, it should give leave to amend unless the "the pleading could

11   not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. Northern*

12   *California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

13

14   **ANALYSIS**

15   **1.   Ms. Green Does Not Plausibly Allege that ADT Owed Her a Duty in Negligence**

16   ADT moves to dismiss Ms. Green's standalone negligence claim, a claim distinct from her

17   products-liability claims.[19] The issue is whether she plausibly alleges that ADT owed her a duty in

18   negligence.

19   The elements of negligence are duty, breach, causation, and damages. *See Hayes v. Cnty. of*

20   *San Diego*, 57 Cal. 4th 622, 629 (2013). The existence of a duty is the starting question: "[t]he

21   threshold element of a cause of action for negligence is the existence of a duty to use due care

22   toward an interest of another that enjoys legal protection against unintentional invasion." *Bily v.*

23   *Arthur Young & Co.*, 3 Cal. 4th 370, 397 (1992). Although "the same wrongful act may constitute

24   both a breach of contract and an invasion of an interest protected by the law of torts[,]" a plaintiff

25

26

27   [19] Motion to Dismiss at 10–12; Reply at 4 n.1; FAC ¶¶ 52–56; Opposition at 4 (clarifying that Ms.
    Green brings four products-liability claims, implying that the two other claims — for negligence and
28   breach of contract — are distinct).

must still identify a duty to support a claim in tort. *Erlich v. Menezes*, 21 Cal. 4th 543, 551 (1999) (quoting *North American Chemical Co. v. Superior Court*, 59 Cal. App. 4th 764, 774 (1997)).

Courts generally "enforce the breach of a contractual promise through contract law, except when the actions that constitute the breach violate social policy that merits the imposition of tort remedies." *Erlich*, 21 Cal. 4th at 522. Tort damages have been available in some contract cases, for example: "[(1)] where a breach of duty directly causes physical injury; [(2)] for breach of the covenant of good faith and fair dealing in insurance contracts; [(3)] for wrongful discharge in violation of fundamental public policy; or [(4)] where the contract was fraudulently induced." *Id.* at 551–52 (citations omitted). In each of these examples, however, "the duty that gives rise to tort liability is either completely independent of the contract or arises from conduct which is both intentional and intended to harm." *Id.* at 552. Thus, "outside the insurance context, a tortious breach of contract . . . may be found when (1) the breach is accompanied by a traditional common law tort, such as fraud or conversion; (2) the means used to breach the contract are tortious, involving deceit or undue coercion or; (3) one party intentionally breaches the contract intending or knowing that such a breach will cause severe, unmitigable harm in the form of mental anguish, personal hardship, or substantial consequential damages." *Id.* at 553–54 (quoting *Freeman & Mills, Inc. v. Belcher Oil Co.*, 11 Cal. 4th 85, 105 (1995)) (internal quotations omitted).

Here, Ms. Green alleges that alleges that ADT "had a duty to keep its products safe for consumer use" in "the installation, maintenance, and monitoring of its alarm product and system."[20] The parties' agreement covers these same obligations: ADT agreed to "install and make operational the Protective Equipment . . . [and] [w]hen [ADT] receives a signal indicating activation of the Protective equipment . . . [it would] observe the procedures described" in the contract.[21] ADT also agreed to provide some level of repair services.[22] Ms. Green nevertheless maintains that ADT's obligations give rise to a duty — and thus her claim — in tort.

---

[20] FAC ¶ 53.

[21] Protective Service Agreement — ECF No. 21-2 § 1(c)

[22] *Id.* § 6.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Ms. Green appears to allege three bases for finding a duty: "ADT's duty of care is based upon

2    [(1)] the contract, [(2)] . . . its gross negligence . . ., and [(3)] the duty assigned to all product

3    manufacturers" for policy reasons.[23] She asserts that these duties, and her resulting broken ankle,

4    give rise to a tort claim under *Erlich*.[24]

5    These arguments do not provide an independent duty in tort to support her standalone (non-

6    products liability) negligence claim. Ms. Green's first source of duty is the contract, but the tort-

7    based duty must be separate from the contract. Ms. Green's second argument fails because it

8    follows the first: without showing a duty to support a simple negligence claim, she cannot support

9    a claim for gross negligence, which also requires a duty. *See Rosencrans v. Dover Images, Ltd.*,

10   192 Cal. App. 4th 1072, 1082 (2011) ("Gross negligence is pleaded by alleging the traditional

11   elements of negligence.") To the extent she attempts to fit gross negligence into *Erlich*'s

12   "intentional and intended to harm" category, gross negligence and intent are different concepts,

13   and she does not plausibly allege that ADT acted intentionally or intended her harm. And her third

14   rationale perhaps supports products-liability claims, but it is irrelevant here: ADT moves to

15   dismiss the standalone negligence claim. The negligence claim is distinct from Ms. Green's

16   products-liability claims. Thus, the fact that ADT allegedly manufactured the alarm system does

17   not plausibly support the existence of a duty (separate from the contract) in installing, maintaining,

18   and monitoring the system. Ms. Green fails to allege that ADT owed her a duty in tort.

19   Absent a tort-based duty, Ms. Green's physical injury (her broken ankle) is insufficient to

20   support a claim under *Erlich*. *See Erlich*, 21 Cal. 4th at 551–52 (explaining tort damages have

21   been available "where a *breach of duty* directly causes physical injury) (emphasis added). The

22   court therefore dismisses Ms. Greens negligence claim (claim five in the FAC).

23

24

25

26

27   ———————————
     [23] Opposition at 5.

28   [24] *Id.* at 4–5.

**2.   The Parties' Agreement Limits Ms. Green's Recovery Based in Contract**

ADT argues that Ms. Green's negligence and breach-of-contract claims are limited by the parties' agreement.[25] Because the court dismisses the negligence claim, the court addresses only whether the agreement limits the contract-based claim. It does.

Contracting parties may limit their potential liability through a liquidated damages provision, the validity of which depends on whether the contract is commercial or consumer in nature. Cal. Civ. Code § 1671. A liquidated damages provision is defined as "an amount of compensation to be paid in the event of a breach of contract, the sum of which is fixed and certain by agreement." *Chodos v. West Publ'g Co.*, 292 F.3d 992, 1002 (9th Cir. 2002) (internal quotations omitted). In commercial contracts, a liquidated damages provision is valid "unless the party seeking to invalidate the provision establishes that the provision was unreasonable under the circumstances at the time the contract was made." *Id.* § 1671(b). In certain consumer contracts, including those for the purchase or rental of personal property or services for household use, a liquidated damages provision is void except "when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage." *Id.* § 1671(d).

"California courts have, in other . . . alarm cases, overwhelmingly upheld and enforced risk allocation provisions." *Valenzuela v. ADT Sec. Servs., Inc.*, 820 F. Supp. 2d 1061, 1075 (C.D. Cal. 2010) (collecting cases). Many of these cases addressed such provisions in the context of alarm systems in commercial buildings. *See, e.g.*, *Better Food Markets, Inc. v. Am. Dist. Tel. Co.*, 40 Cal. 2d 179 (1953) (burglar alarm in food market); *Atkinson v. Pacific Fire Extinguisher Co.*, 40 Cal. 2d 192 (1953) (fire alarm in planing mill); *Guthrie v. Am. Protection Indus.*, 160 Cal. App. 3d 951 (1984) (burglar alarm in jewelry store); *Fireman's Fund Ins. Co. v. Morse Signal Devices*, 151 Cal. App. 3d 681 (1984) (burglar alarm in commercial buildings); *Feary v. Aaron Burglar Alarm, Inc.*, 32 Cal. App. 3d 553 (1973) (burglar alarm in jewelry store). These courts reasoned that the alarm-service companies are not insurers of the premises secured, *see Gurthrie*, 160 Cal. App. 3d at 954, and that, as a matter of law, it would be "impracticable or extremely difficult to fix

---

[25] Motion to Dismiss at 5–6; Protective Services Agreement §7.

1    the actual damage" caused by the alarm companies' contract breaches, *see Better Food Markets*,

2    40 Cal. 2d at 186 (citing Cal. Civ. Code §§ 1670, 1671). Thus, the risk-allocation — or, liquidated

3    damages — provisions were not against public policy and were valid under California law.

4        In *Jhaveri v. ADT Sec. Servs., Inc.*, a home security system case, the district court enforced a

5    damages limitation provision on a motion for judgment on the pleadings. No. 2:11-cv-4426-JHN-

6    MANx, 2012 WL 843315, at *6–*7 (C.D. Cal. Mar. 6, 2012), *reversed on other grounds* 583 Fed.

7    Appx. 689 (9th Cir. 2014). The court there addressed a "limitation-of-damages provision in the

8    parties' agreement . . . that limit[ed] Plaintiffs' potential recovery to the contractually agreed upon

9    amount." *Id.* at *6. Pointing to California cases similar to those above — but without

10   distinguishing the commercial versus consumer nature of the contract — the court concluded that

11   the limitation provision was enforceable against the plaintiff. *Id.* at *7. The Ninth Circuit agreed

12   on this point: "We agree with the district court that, to the extent plaintiffs seek a remedy for a

13   breach of contract, that remedy is limited to the liquidated damages provision in the parties'

14   agreements." 583 Fed. Appx. at 690.

15       Here, like *Jhaveri*, Ms. Green's contract with ADT is for a home security system.[26] And like

16   *Jhaveri*, the contract contains a limitation-of-damages provision: ADT's liability is limited to "not

17   more than the total amount of fees actually paid to [ADT] under . . . [the] agreement during the

18   [previous] twelve-month period."[27] That amounts to $371.40.[28] ADT's current motion seeks only

19   to limit Ms. Green's contract and negligence claims by this provision; her counter arguments

20   focusing on strict products liability and gross negligence are inapposite.[29] *See Valenzuela*, 820 F.

21   Supp. 2d at 1074 (dismissing argument the defendant's gross negligence voided the contract

22   because the plaintiff did not show the defendant owed a duty in tort).

23       Ms. Green's contract with ADT may fall within section 1671(c)'s "consumer contract" — it is

24   apparently a contract for products and services for use in the household. Nevertheless, in light of

---

26   [26] FAC ¶¶ 6–7.

27   [27] Protective Services Agreement § 7(e) (emphasis removed).

     [28] *Id.* § 2(b) ($30.95 per month multiplied by twelve months equals $372.40).

28   [29] Motion to Dismiss at 5–6; Opposition at 2–4.

*Better Food Markets*, which decided as a matter of law that it is impracticable to fix the amount of damages in alarm-system contracts, *see* Cal. Civ. Code § 1671(d), and *Jhaveri*, the limitation-of-liability provision is enforceable with respect to Ms. Green's breach-of-contract claim.

### 3. Ms. Green Plausibly Alleges a Claim for Failure to Warn and Manufacturing Defect

ADT moves to dismiss Ms. Green's claims two and four to the extent they raise products liability claims for failure to warn and for manufacturing defects.[30] Because Ms. Green has not plausibly pled these claims, the court dismisses them but grants leave to amend.

### 3.1 The Court Considers ADT's Arguments

As a threshold matter, both parties argue the court need not even address the merits of ADT's arguments. Ms. Green urges the court not to consider ADT's arguments because it could have raised the issues earlier, but did not, and is thus precluded from doing so now.[31] ADT, on the other hand, asserts that Ms. Green's opposition fails to address the merits of the attack and thus abandons the claims.[32]

First, citing Rule 11 and *Aetna Life Ins. Co. v. Alla Med. Servs.*, Ms. Green argues that ADT's "piecemeal" "successive" motions were filed for dilatory purposes and should be denied on this ground alone.[33] 855 F.2d 1470 (9th Cir. 1988). "Rule 11 addresses two separate problems: 'first, the problem of frivolous filings; and second, the problem of misuing judicial procedures as a weapon for personal or economic harassment.'" *Id.* at 1475 (quoting *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 830 (9th Cir. 1986)). Under the second prong, "[i]f a court finds that a motion or paper, other than a complaint, is filed in the context of a persistent pattern of clearly abusive litigation activity, it will be deemed to have been filed for an improper purpose and sanctionable." *Id.* at 1476.

---

[30] Motion to Dismiss at 12–16.

[31] Opposition at 6.

[32] Reply at 7.

[33] *Id.*

In *Aetna*, the defendants' conduct may have been considered "part of a pattern of abusive litigation activity." *Id.* In that case, the defendants delayed answering the complaint for seven months. *Id.* In the two months after the complaint was filed, two of the defendants filed separate motions for more definite statements. *Id.* Sixteen of the defendants later filed a motion to dismiss, which was denied and deemed frivolous. *Id.* Two different defendants then filed another motion to dismiss, which was later joined by fourteen additional defendants who had previously filed a "12(b)" motion. *Id.* The Ninth Circuit did not decide if this conduct was sanctionable, but noted the activity "may warrant sanctions under the improper purposes prong of Rule 11." *Id.* 1477.

Unlike in *Aetna*, there is no evidence of dilatory, improper litigation activity here. ADT could have made these arguments in its first motion to dismiss, but this fact alone is insufficient to show an improper purpose under Rule 11 and *Aetna*. The court therefore denies Ms. Green's argument.

The court notes, however, that "[t]he filing of an amended complaint will not revive the right to present by motion defenses that were available but were not asserted in a timely fashion prior to the amendment of the pleading." *Federal Agr. Mortg. Corp. v. It's a Jungle Out There, Inc.*, No. C 03-3721 VRW, 2005 WL 3325051, at *5 (N.D. Cal. Dec. 7, 2005) (quoting Wright & Miller, 5C Fed. Prac. & Proc. Civ. § 1388 (3d ed.)). Rule 12(g)(2) provides that "[e]xcept as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Rule 12(h)(2) states that arguments relating to the plaintiff's "failure to state a claim" may be raised "(A) in any pleading allowed or ordered under Rule 7(a); (B) by a motion under Rule 12(c); or (C) at trial." To summarize: "under Rule 12(g)(2) and rule 12(h)(2), a party that seeks to assert a defense that was available but omitted from an earlier Rule 12 motion can only do so in a pleading allowed or ordered under Rule 7(a), a Rule 12(c) motion, or at trial." *Romo v. Wells Fargo Bank, N.A.*, No. 15-cv-03708-EMC, 2016 WL 3523779, at *2 (N.D. Cal. June 28, 2016).

Thus, under Rule 12(g) and (h), courts in this district have precluded defendants from raising previously available but unmade arguments in motions to dismiss after a complaint is amended. *See, e.g.*, *Romo*, 2016 WL 3523779 at *2; *In re Anthem, Inc. Data Breach Litigation*, No. 15-MD-

02617-LHK, 2016 WL 3029783, at *44–*45 (N.D. Cal. May 27, 2016). Some courts have, however, exercised their discretion to consider the untimely arguments "if they were not interposed for delay and the final disposition of the case would thereby be expedited." *Agape Family Worship Center, Inc. v. Gridiron*, No. 5:15-cv-1465-ODW-SPx, 2016 WL 3003207, at *2 (C.D. Cal May 24, 2016) (citing *Johnson v. Serenity Transp., Inc.*, No. 15-cv-02004-JSC, 2016 WL 270952, at *7 (N.D. Cal. Jan. 22, 2016)); *see also In re Apple iPhone Antitrust Litigation*, No. 11-cv-06714-YGR, 2013 WL 4425720, at *13 (N.D. Cal. Aug. 15, 2013) ("Even if a party files successive motions, a court has discretion to consider the arguments to expedite final disposition on particular issues.")

Under the circumstances, the court considers the arguments because Ms. Green did not squarely raise the issue under Rule 12(g) and (h), there is no indication of dilatory conduct, and judicial economy is best served by addressing the issues now.

The second issue is ADT's argument that Ms. Green waived her failure-to-warn and manufacturing defect claims by not addressing the merits of its attack. The court disagrees. Ms. Green did not abandon her claims; rather, she lodged what turned out to be an unsuccessful procedural counterargument (see above). The record does not support waiver.

### 3.2 Ms. Green Plausibly Identifies a Risk that ADT Knew of, Could Have Known of, or Should Have Known of

Ms. Green asserts two products liability claims for ADT's alleged failure to provide adequate warnings: one in strict liability and one in negligence.[34] ADT moves to dismiss both because she fails to plausibly allege that it had the requisite awareness of a particular risk.[35]

In California, the elements of failure to warn in strict liability are: "(1) the defendant manufactured, distributed, or sold the product; (2) the product had potential risks that were known or knowable at the time of manufacture or distribution, or sale; (3) that the potential risks presented a substantial danger to users of the product; (4) that ordinary consumers would not have

---

[34] FAC ¶¶ 27–35, 43–51.

[35] Motion to Dismiss at 12–16.

United States District Court
Northern District of California

recognized the potential risks; (5) that the defendant failed to adequately warn of the potential

risks; (6) that the plaintiff was harmed while using the product in a reasonably foreseeable way;

(7) and that the lack of sufficient warnings was a substantial factor in causing the plaintiff's

harm." *Rosa v. City of Seaside*, 7 F. Supp. 2d 1006, 1011 (N.D. Cal. 2009) (quoting Jud. Council

of Cal. Civ. Jury Instruction No. 1205). Likewise, a failure to warn claim in negligence requires a

showing that: "(1) the defendant manufactured, distributed, or sold the product; (2) the defendant

knew or reasonably should have known that the product was dangerous or was likely to be

dangerous when used in a reasonably foreseeable manner; (3) the defendant knew or reasonably

should have known that users would not realize the danger; (4) the defendant failed to adequately

warn of the danger or instruct on the safe use of the product; (5) a reasonable manufacturer,

distributor, or seller under the same or similar circumstances would have warned of the danger or

instructed on the safe use of the product; (6) the plaintiff was harmed; and (7) the defendant's

failure to warn or instruct was a substantial factor in causing the plaintiff's harm." *Rosa*, 7 F. Supp.

2d at 1011–12 (quoting Jud. Council of Cal. Civ. Jury Instruction No. 1222).

In either case, the plaintiff must show the defendant had some level of awareness — *i.e.* the

defendant knew, could have known, or should have known — of a "particular risk." In strict

liability, the plaintiff must prove "only that the defendant did not adequately warn of a particular

risk that was known or knowable in light of the generally recognized and prevailing best scientific

and medical knowledge available at the time of manufacture and distribution." *Anderson v.*

*Owens-Corning Fiberglass Corp.*, 53 Cal. 3d 987, 1002 (1991). And in negligence, the plaintiff

must "prove that a manufacturer or distributor did not warn of a particular risk for reasons which

fell below the acceptable standard of care, i.e., what a reasonably prudent manufacturer would

have known and warned about." *Anderson*, 53 Cal. 3d at 1002–03.

Here, Ms. Green alleges the ADT security system "did not include sufficient warnings or

instructions of potential safety hazards," and, on the night of the incident, ADT did not warn her

that the system "might not be functioning correctly, or that it could be a false alarm."[36] She further

---

[36] FAC ¶ 29.

United States District Court
Northern District of California

alleges that ADT knew, could have known, or should have known of the potential risks (*i.e.* a malfunction leading to a false alarm) because it "received and maintains claims files, warranty returns, consumer complaints, databases, documents, lawsuits, and other information *putting it on notice* that the subject security system" was defective, including as a result of ADT's failure to properly warn about those defects.[37] This allegation specifically asserts that the claims and other documents ADT received put it on notice of the defects (and thus the risks) here: that the system may malfunction and initiate a false alarm.

At the pleading stage, this is enough. The court therefore denies ADT's motion to dismiss Ms. Green's failure-to-warn claims.

### 3.3 Ms. Green Plausibly Alleges that the Alarm System Deviated from the Intended Result

Ms. Green's fourth claim is for a manufacturing defect in the alarm system.[38] The issue is whether she plausibly alleges that the system deviated from ADT's intended result.[39]

A manufacturing defect arises "when a flaw in the manufacturing process creates a product that differs from what the manufacturer intended." *Webb v. Special Elec. Co.*, 63 Cal. 4th 167, 180 (2016) (citing *Brown v. Superior Court*, 44 Cal. 3d 1049, 1057 (1988)). Here, Ms. Green alleges ADT "discovered that the detection of the supposed intruder had actually been caused by a disconnected wire in the control box."[40] She asserts that she "did not have any contact with any of the ADT equipment in her home such as to cause the system to malfunction."[41] This plausibly supports a conclusion that the control box, unaffected by Ms. Green, deviated from ADT's intended manufacturing result. ADT may in the end be correct — *i.e.* that after ten years of use in the home without incident, Ms. Green is unable to produce evidence that the security system

---

[37] *Id.* ¶¶ 12, 31(e), 48 (emphasis added).

[38] *Id.* ¶¶ 43–51.

[39] Motion to Dismiss at 15–16.

[40] FAC ¶ 8.

[41] *Id.*

United States District Court
Northern District of California

deviated from the intended result. But at this stage, the allegations are sufficient to move forward. The court denies ADT's motion to dismiss Ms. Green's manufacturing defect claims.

### CONCLUSION

The court grants in part ADT's motion and dismisses with leave to amend Ms. Green's negligence claim (claim five). Ms. Green's other claims survive. Any amended complaint must be filed within 21 days of the date of this order.


**IT IS SO ORDERED.**

Dated: September 23, 2016

_____

LAUREL BEELER
United States Magistrate Judge